**Steven C. WHITE, Plaintiff,**

v.

**CITY OF SPARKS, Defendant.**

**No. CV–N–03–0251–DWH RAM.**

United States District Court,
D. Nevada.

Aug. 5, 2004.

---

Terri Keyser–Cooper, Reno, Dianne K. Vaillancourt, Santa Cruz, CA, for Plaintiff.

Chester H. Adams, Sparks City Attorney, Thomas F. Riley, Senior Assistant Sparks City Attorney, Sparks, NV, for Defendant.

### ORDER

HAGEN, District Judge.

Before the court is plaintiff's motion for partial summary judgment (# 50). Plaintiff has filed separate exhibits in further support of this motion (# 51). Defendant has opposed (# 53), and plaintiff has replied (# 54). In response to plaintiff's reply, defendant filed a motion to strike all new argument first raised in plaintiff's reply, and, alternatively, a supplemental opposition to plaintiff's motion for partial summary judgment (# 57). Plaintiff countered by filing in a single document: (1) an opposition to defendant's motion to strike (# 59); (2) a motion to strike defendant's supplemental opposition (# 60); and (3) a supplemental reply in support of his motion for partial summary judgment (# 61). Defendant responded with: (1) a motion to strike plaintiff's supplemental reply (# 63); (2) an opposition to plaintiff's motion to strike defendant's supplemental opposition (# 64); and (3) a reply to plaintiff's opposition to defendant's motion to strike (# 65). Plaintiff then filed an opposition to defendant's motion to strike plaintiff's supplemental reply (# 67), to which defendant replied (# 68).

Also before the court is plaintiff's motion for partial summary judgment as to Victorian Square (# 55) and an errata thereto containing a missing exhibit (# 56). Defendant has opposed (# 58), and plaintiff has replied (# 62).

### I. *Factual Background*

Plaintiff Steven C. White ("White") brings this case against the City of Sparks pursuant to 42 U.S.C. §§ 1983 and 1988, claiming that his rights under the First and Fourteenth Amendments to the United States Constitution have been violated because Sparks Municipal Code ("SMC") §§ 5.59, *et seq.*, prohibits him from selling his art on Sparks's streets and parks without first obtaining a "Roadway and Sidewalk Vendors" license. (*See generally* Compl. (# 2).) White earns his living as an artist by traveling throughout the United States, setting up an easel on streets and in parks, and interacting with passersby who take an interest in his work. (*Id.* at ¶ 6.) His subject matter is nature and his paintings often include trees, mountains, animals, and birds. (*Id.*) Many of White's paintings have a " 'Native American' theme, incorporating his philosophy about the environment, the spirituality of the universe, and the need to protect animals." (*Id.*) He "believes his paintings convey the message that human beings are driving their spiritual brothers and sisters, the animals, into eternity/extinction." (*Id.* at ¶ 8.) White has refrained from displaying and selling his work in Sparks's city parks and Victorian Square areas because he is "intimidated by the licensing requirements, unclear what criteria would be used to judge his art, and fearful of arrest." (*Id.* at ¶ 11.)

White has brought a cause of action under the First Amendment, alleging that SMC §§ 5.59 *et seq.*, regarding the licensing of "Roadway and Sidewalk Vendors," is facially unconstitutional because, *inter alia*, it is vague, overbroad, and operates as a prior restraint on speech. (*Id.* at 5.) He also has pled two causes of action under the Fourteenth Amendment for due process and equal protection violations. (*Id.* at 5–6.) The gist of plaintiff's constitutional argument is that these provisions of the city ordinance are both content-based restrictions and prior restraints on speech that are not narrowly tailored to serve a significant government interest and do not leave open ample alternative channels of communication. Specifically, plaintiff believes that there is

no reasonable distinction between merely displaying original art—which is not subject to the contested provisions—and selling it. (*See generally* Pl.'s motions for partial summary judgment (#s 50, 55).) White requests relief in the form of: (1) a declaration that SMC §§ 5.59, *et seq.*, as pertaining to Roadway and Sidewalk Vendors, is unconstitutional either on its face or as applied to plaintiff because it violates plaintiff's First and Fourteenth Amendment rights; (2) compensatory damages in an amount to be determined at trial; (3) temporary, preliminary, and permanent injunctive relief enjoining defendants from enforcing the Roadway and Sidewalk Vendors ordinance; (4) attorneys fees and costs pursuant to 42 U.S.C. § 1988, or any other applicable statute; and (5) any other relief deemed just and proper by the court. (Comp.(# 2) at 6–7.) White also filed a motion for preliminary injunction (# 5), which the court denied (# 33). The denial was affirmed by the Ninth Circuit on appeal (# 46, # 47).

Defendant, City of Sparks ("Sparks") has counterclaimed, alleging that relevant SMC provisions [1] neither impose prior restraints on the sale of any person's artwork nor restrict the mere display of artwork, and instead are facially constitutional time, place, and manner restrictions. (Counterclaim (# 17) at 9.) Sparks also contends that because plaintiff never applied for a business license, an outdoor sales business license or a Victorian Square Vendor's Permit as allowed under the SMC, he "has waived, or is estopped to argue, [*sic*] that the SMC provisions are unconstitutional 'as applied' to him." (*Id.*) The city requests that judgment be entered (1) declaring the provisions of the SMC to be facially constitutional under the First Amendment and the due

process and equal protection clauses of the Fourteenth Amendment, and (2) finding that plaintiff does not have standing to bring an "as applied" challenge because he failed to apply for a business license, and outdoor sales license, or a Victorian Square Vendor's Permit. (*Id.* at 10.)

## II. *Analysis*

### A. Motions to Strike, Supplemental Responses, and Requests for Sanctions

While the court recognizes that litigation is an inherently contentious endeavor, the parties to this particular action have gone to great and excessive lengths in order to have what they describe as "the last word." In the wake of a motion by plaintiff for partial summary judgment (# 50), both sides have filed motions to strike along with supplemental responses and have requested the issuance of sanctions, vehemently protesting one another's impertinence and objecting to unfair argumentation and improper pleading. What neither party seems aware of, however, is that this is clearly a situation of the pot calling the kettle black. For example, defendant, who may be credited with beginning this battle of the paperwork, filed a motion to strike a "new argument" in plaintiff's reply for violating LR 7–2, and accompanied it with a supplemental opposition for which he did not seek leave of the court to file. Plaintiff responded by filing both a motion to strike defendant's supplemental opposition, also claiming a violation of LR 7–2, and a supplemental reply. Defendant then filed a second motion to strike, requesting that plaintiff's supplemental reply be stricken because plaintiff "contemptuously ignored all Court Rules, including *failing to seek leave of*

---

1. In its counterclaim, Sparks identifies various other SMC sections in addition to the ones challenged, including SMC §§ 20.53, *et seq.*, pertaining to the sale of artwork on Sparks's streets and in its parks.

*court* ... to file his 'Supplemental Reply'." (# 63 at 2 (emphasis added).) Despite the fact that the parties' arguments have degenerated into what can only be described as quibbling, the court has reviewed and will address these issues to the extent necessary to resolve the matter before it— plaintiff's motion for partial summary judgment (# 50).

Defendant's first motion to strike (# 57) claims that plaintiff has "injected an entirely new argument and request for relief" into his reply, and that this argument, which raises the question of whether plaintiff's art is constitutionally protected simply because it is art, should be stricken as violating the language and intent of LR 7–2. (Mot. to Strike (# 57) at 4.) Defendant also points to Fed.R.Civ.P. 12(f), which allows a court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," as authority for striking this "new argument," as well as Ninth Circuit case law stating that "[n]ew material does not belong in a reply brief" because it "provides the appellee no opportunity to meet the contention." (*Id.* at 5) (quoting *Ellingson v. Burlington Northern, Inc.*, 653 F.2d 1327, 1332 (9th Cir.1981).) Plaintiff, in opposition, argues that defendant's motion to strike is disingenuous in that it is an improper and cynical attempt both to interject a supplemental brief into the motion cycle and to manipulate the court rules in order to delay appropriate resolution of this case. (Opp'n to Def.'s Mot. to Strike (# 59) at 1–2.) According to plaintiff, nothing in his reply warrants being either stricken or opposed because it is "a straight-on response to defendant's opposition" that also "adheres closely to both the letter and intent of his original motion." (*Id.* at 2–3.)

■ In deciding whether to strike part of plaintiff's reply, the court must first determine whether it in fact contains any new arguments. Specifically, the question is whether plaintiff in his motion for partial summary judgment (# 50) raised the argument that his art is constitutionally protected expression simply because it is art. The court finds that he did. Plaintiff, in his motion for partial summary judgment (# 50), argues among other things that unlike merchandise, artistic expression need not have a political, religious, philosophical, or ideological message in order to be protected by the First Amendment. (Pl.'s Mot. for Partial Summ. J. (# 50) at 10.) He claims that paintings "historically [have been] viewed as containing First Amendment protected expression," and that sale of such protected materials also is protected. (*Id.* at 11.) In fact, plaintiff repeatedly contends that visual arts in general and paintings specifically always are entitled to First Amendment protection. (*See id.* at 11, 12 ("[v]isual art ... entitled to full First Amendment protection"), 15 ("paintings, photographs, prints, and sculptures ... always communicate some idea or concept ... and as such are entitled to full First Amendment protection"), 16 ("First Amendment found to protect ... art" and "White's paintings and sculpture fall squarely within the area of protected expression historically recognized as warranting First Amendment protection.").) Plaintiff's claim in his reply that his art is constitutionally protected simply because it is art (Pl.'s Reply (# 54) at 14) is merely another formulation of these arguments, and as such was clearly and unequivocally set forth in his motion. To find otherwise would be absurd. Moreover, the court wonders how defendant can even claim this argument is new when it attempted to refute the argument in its original opposition, stating that "[i]t is clear that the sale of *all* artwork does not fall within the constitutional protections afforded by the First Amendment."

(Def.'s Opp'n (# 53) at 9; *see also id.* at 14 (acknowledging that plaintiff cited to *Bery v. City of New York,* 97 F.3d 689 (2nd Cir.1996), *cert. denied,* 520 U.S. 1251, 117 S.Ct. 2408, 138 L.Ed.2d 174 (1997), as authority that *"all* of an artist's paintings are protected under the First Amendment" and contending that "[n]othing could be further from the truth).")

Accordingly, because this court finds no new arguments in plaintiff's reply (# 54), defendant's motion to strike (# 57) is denied. Neither defendant's supplemental opposition, nor plaintiff's supplemental reply will be considered. Plaintiff's motion to strike defendant's supplemental opposition (# 60) is denied as moot, as is defendant's motion to strike plaintiff's supplemental reply (# 63). Although the court is dismayed by the pettiness displayed by both parties in filing these frivolous motions, neither parties' request for sanctions will be granted.

## B. Motions for Summary Judgment

Plaintiff has filed two separate motions for summary judgment. The first pertains to Sparks's city parks (# 50), and the second to Victorian Square in Sparks (# 55).

### 1. Standard on Motion for Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Martinez v. City of Los Angeles,* 141 F.3d 1373, 1378 (9th Cir. 1998). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *Lynn v. Sheet Metal Workers' Int'l Ass'n,* 804 F.2d 1472, 1483 (9th Cir.1986); *S.E.C. v. Seaboard Corp.,* 677 F.2d 1301, 1306 (9th Cir.1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Board v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free … to grant summary judgment."). Moreover, "[i]f the factual context makes the nonmoving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." *Blue Ridge Insurance Co. v. Stanewich,* 142 F.3d 1145, 1149 (9th Cir.1998) (citing *Cal. Architectural Bldg. Products, Inc. v. Fran-*

ciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987)). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).

Finally, if the nonmoving party fails to present an adequate opposition to a summary judgment motion, the court need not search the entire record for evidence that demonstrates the existence of a genuine issue of fact. *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029–31 (9th Cir.2001) (holding that "the district court may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers"). The district court need not "scour the record in search of a genuine issue of triable fact," but rather must "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995)). "[The nonmoving party's] burden to respond is really an opportunity to assist the court in understanding the facts. But if the nonmoving party fails to discharge that burden-for example by remaining silent-its opportunity is waived and its case wagered." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir.1992).

## 2. Motion for Partial Summary Judgment as to Sparks's City Parks (# 50)

Plaintiff has moved "for partial summary judgment on the issue of whether he may sell his art in Sparks's city parks on the same terms that he is permitted to display his art" in those parks.[2] (Pl.'s Mot. for Partial Summ. J. (# 50) at 2.) Plaintiff claims that Sparks's policy mandating that art first be shown to Sparks's employees to ascertain whether they believe it contains a protected constitutional message before it can be sold in city parks is pure content-based discrimination. (*Id.* at 4–7.) Specifically, plaintiff contends that his artwork is fully protected under the First Amendment (*id.* at 10–13), and that because city parks are public fora, strict scrutiny applies to this type of content-based restriction on expression (*id.* at 13–14). Plaintiff requests that the court declare as unconstitutional and permanently enjoin "Sparks' [*sic*] policy prohibiting him from selling his art in Sparks' [*sic*] parks without Sparks' [*sic*] examination of his art to discern whether it contains an appropriate 'religious, political, ideological, or philosophical' message." (*Id.* at 25.) In his reply (# 54), plaintiff appears to have narrowed the issue on which he is seeking partial summary judgment to whether art is per se constitutionally protected. (Reply (# 54) at 2.) According to plaintiff, such a determination would end the inquiry because Sparks has conceded that under its policy a "vendor is entitled to sell his protected 'speech' in the parks subject to

---

**2.** The fact that plaintiff may display his art in Sparks's typical city parks without restriction is actually of no consequence to this litigation. The reason that plaintiff may do so is not because he is constitutionally permitted to do so, but because Sparks has no ordinance prohibiting it. "Our cases make clear ... that even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provid-

ed the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Here the city apparently chose only to regulate sales and not display.

only the same park rules and regulations as all other users." (*Id.* at 2–3 (quoting Opp'n (# 53) at 11).)

SMC § 20.53.030B [3] places limitations on "the sale of goods not in connection with an established business," the first of which requires that such sales only be conducted in "a C1, C2, IC or TC district within an established commercial development." This provision has been interpreted by the city to prohibit the sale of goods in its typical parks which are designated as public facilities, or PF, districts. (Opp'n (# 53) at Ex. J.) The violation of this provision would result in a misdemeanor under SMC 1.12.01. (*Id.*) While there do not appear to be any explicit exceptions to this total ban on the sale of goods in its parks, Sparks has represented through its pleadings, responsive motions, and answers to interrogatories that "goods" only refers to goods or merchandise not protected as speech under the First Amendment.[4] (*Id.* at 5.) According to the city, it will allow an individual to sell his or anyone else's paintings in its typical parks without restriction (i.e., no license or permit required), "if the painting offered for sale conveys a religious, political, philosophical or ideological 'message'." (*Id.*) A person wishing to sell goods or merchandise as "protected speech" must seek a determination to that effect from the city's staff, who "has been

instructed to obtain a legal opinion before granting or denying any request." (*Id.*) Sparks states that the determination of "whether goods or merchandise presents [*sic*] a religious, political, philosophical or ideological message is based on common sense and the plain meanings of the four categories," and further claims that "[t]here are no limiting criteria or standards, which could result in incorrect determinations." (*Id.* at 7.)

### a. Protected "Speech"

 As an initial matter, it is unquestioned that the First Amendment protection is not lost simply because the protected expression is sold for profit. *See City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 756 n. 5, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (expressive items are no less protected than they would otherwise be under the First Amendment merely because they are sold for profit); *see also Riley v. Nat'l Fed'n of Blind of North Carolina*, 487 U.S. 781, 801, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) ("It is well settled that a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak."). It is also unquestioned that the First Amendment shields far more than just written and spoken forms of expression.

---

**3.** The court notes that the motion for partial summary judgment requests only a determination regarding the extent to which visual artistic expression is protected by the First Amendment, and the constitutionality of Sparks's policy excepting First Amendment protected speech from its ban on sales of goods in its typical city parks. The court was not asked to consider the underlying ordinance, SMC § 20.53.030B, to determine its constitutionality for First Amendment purposes in the absence of the interlineated policy. As such, the court expresses no opinion as to whether Sparks may totally ban all sales of goods, including items qualifying as protected speech, in its typical city parks.

**4.** The court has no evidence of the existence of this policy other than these representations advanced during litigation by the city attorney. In fact, the affidavit of the Operations Superintendent for the Sparks Department of Parks and Recreation, in which he stated that he informed plaintiff "he couldn't sell his paintings in the parks even if he obtained a business license" (Bessette Aff. ¶ 3, Opp'n (# 53) at Ex. E), and that "if any sales of artwork took place, it would be illegal" (*id.* at ¶ 4), belies the existence of this policy. However, because defendant has conceded it, the court will presume the policy exists.

*See Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 569, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995). However, contrary to plaintiff's assertions, all visual art is not historically and unquestionably entitled to full First Amendment protection. While the Supreme Court has found protection for a broad array of artistic expression, including music, theater, and film, *see, e.g., Ward v. Rock Against Racism*, 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (music without regard to words); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 557–58, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975) (theater); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501–02, 72 S.Ct. 777, 96 L.Ed. 1098 (1952) (film); *Miller v. California*, 413 U.S. 15, 34–35, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) ("expression of serious literary, artistic, political, or scientific ideas," unless obscene in legal sense); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932–34, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (topless dancing), as well as for many instances of expressive conduct, *see e.g. Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 569, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) (parades); *Gregory v. Chicago*, 394 U.S. 111, 112, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969) (peaceful marches to express grievances to governmental authorities); *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 505, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (wearing of black arm bands to evidence disapproval of U.S. involvement in Vietnam); *Brown v. Louisiana*, 383 U.S. 131, 141–42, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966) (sit-ins to protest racial discrimination); and *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 632, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) (refusal to salute flag), it has not provided blanket protection for all visual art. The Supreme Court, however, has explained that "a narrow, succinctly articulable message is not a condition of constitutional protection, which if confined to expressions conveying a 'particularized message,' would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll." *Hurley*, 515 U.S. at 569, 115 S.Ct. 2338 (citation omitted).

Only the Second Circuit has gone so far as to award certain visual art—specifically paintings, photographs, prints and sculptures—the full and unquestioned protection of the First Amendment. *Bery v. City of New York*, 97 F.3d 689, 695 (2nd Cir.1996), *cert. denied*, 520 U.S. 1251, 117 S.Ct. 2408, 138 L.Ed.2d 174 (1997); *see also Piarowski v. Illinois Community College Dist. 515*, 759 F.2d 625, 628 (7th Cir.), *cert. denied*, 474 U.S. 1007, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985) (stained glass windows constituting "art for art's sake" nevertheless protected under First Amendment's guarantees which embrace purely artistic as well as political expression). In *Bery*, the Second Circuit held that "[v]isual art is as wide ranging in its depiction of ideas, concepts and emotions as any book, treatise, pamphlet or other writing, and is similarly entitled to full First Amendment protection." *Bery*, 97 F.3d at 695. In expressing this unprecedented holding the court distinguished between art and merchandise, stating that while "the crafts of the jeweler, the potter and the silversmith who seek to sell their work ... may at times have expressive content, paintings, photographs, prints and sculptures ... always communicate some idea or concept to those who view it, and as such are entitled to full First Amendment protection." *Id.* at 696.

█ While plaintiff would have this court adopt the *Bery* holding and find that all paintings, photographs, prints and sculptures are inherently expressive,

thereby eliminating the need for any individualized inquiry into the expressiveness of a particular piece of art or a particular type of artwork, the court declines this invitation. Applying such a blanket presumption of protected status would not only be unnecessary to resolve the motion before the court, but would also be out of step with Ninth Circuit precedent and the First Amendment's fundamental purpose—to protect *expression*. Even a lower court within the Second Circuit faced with interpreting and applying the *Bery* holding recognized the decision's inherent problems. The Southern District of New York, in *Mastrovincenzo v. City of New York*, 313 F.Supp.2d 280 (S.D.N.Y.2004), attempting "to delineate a border between protected, expressive art and unprotected, non-expressive merchandise," *id.* at 286, noted that the difficulty with *Bery* is that it is

> arguably at once too broad and too narrow in [its] scope of protection. Conceivably, not every item of painting, photograph, print or sculpture that may be offered for sale on City sidewalks by any vendor is necessarily so expressive as to categorically merit First Amendment protection, but at the same time some objects outside those four categories may also be sufficiently expressive.

*Id.* at 294 n. 11. This court agrees with the Southern District of New York that "not all forms of visual artwork are always necessarily so communicative or expressive that no further inquiry is needed to determine whether they merit First Amendment protection," *id.* at 286, and therefore declines to find that all visual artwork is entitled to full First Amendment protection.

While the Ninth Circuit has not yet specifically faced the question of whether and to what extent art is protected by the First Amendment, it has stated that "[t]he sale of merchandise which carries or constitutes a political, religious, philosophical or ideological message falls under the protection of the First Amendment." *Am. Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1107 (9th Cir. 2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 1077, 157 L.Ed.2d 897 (2004) (citing *Gaudiya Vaishnava Society v. City and County of San Francisco*, 952 F.2d 1059, 1063 (9th Cir.1990)). Defendant argues that this standard must be applied to plaintiff's work in order to determine whether it is protected speech under the First Amendment, and that only merchandise containing a message falling within one of those four categories is entitled to First Amendment protection. (Opp'n (# 53) at 8–9.). Specifically, defendant contends that "[t]he sale of a painting, computer-generated image, or other depiction of a bowl of fruit, a young girl, a herd of deer, a mountain lake, a medieval castle or a million other things which do not carry or constitute a 'political, religious, philosophical or ideological message' are not protected." (*Id.* at 9.) The city further insists that "[s]imply because artwork may be 'beautiful' or merely 'pleasant to look at' does not afford constitutional protection to its sale." (*Id.*) Moreover, a footnote in defendant's opposition, noting that many of plaintiff's paintings do not include "potentially protected symbols such as white buffalo and Indian faces" (*id.* at 12 n. 2), indicates to this court that the city has interpreted the Ninth Circuit's language very narrowly. Plaintiff, on the other hand, relying on the distinction made by *Bery*, claims that this standard is inapplicable because he wants to sell art and not merchandise. (Reply (# 54) at 11.)

██ Although this court agrees with the Second Circuit in finding a distinction between art and merchandise, it recognizes, like the Southern District of New York, that this distinction is at best a blurry line, the precise delineation of

which may prove impossible. "Because . . . almost every object can conceivably be interpreted as having some expressiveness, there may be instances when the line between protected expression and unprotected merchandise will seem arbitrary. Such is the stuff of First Amendment law." *Mastrovincenzo,* 313 F.Supp.2d at 292. In the absence of binding precedent to the contrary, rather than attempt to distinguish the Ninth Circuit standard for the sale of merchandise from plaintiff's desire to sell his artwork, the court prefers to find plaintiff's art protected by the First Amendment under the Ninth Circuit's standard. First, this court must note that defendant's interpretation of that standard is far too restrictive. The Supreme Court has explained that "a narrow, succinctly articulable message is not a condition of constitutional protection, which if confined to expressions conveying a 'particularized message,' would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll." *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston,* 515 U.S. 557, 569, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) (citation omitted). Accordingly, the Ninth Circuit's requirement—that merchandise carry or constitute a political, religious, philosophical or ideological message in order to merit First Amendment protection—must be read broadly to encompass both explicit, understandable messages and implicit, abstract expression. If Pollock's work conveys a message likely to be understood by the viewer, then "it is difficult to conceive of many works of art that would fail" this test. *See Mastrovincenzo,* 313 F.Supp.2d at 287.

■ Plaintiff here has submitted several examples of his work. (Pl.'s Exs. in Further Support of Mot. for Partial Summ. J. (# 51).) He also has provided this court with a declaration stating that his art conveys his message of "love for nature and wildlife" (Pl.'s Dec. at ¶ 5, Pl.'s Mot. for Summ. J. (# 50), Ex. 5), that many of his paintings have "a Native American Spiritual theme" and "express the importance of caring for the environment and protecting . . . the other living creatures that share mother earth" (*id.* at ¶ 8), and that his paintings are intended to "teach people and convey a message about human beings driving . . . the animals into eternity/extinction." (*Id.* at ¶ 9.) Defendant, relying on these statements and arguing that this is an admission by plaintiff that not all of his work is protected, intimates that plaintiff's work must contain specific symbols such as white buffalo or spirit faces in the clouds in order to convey his message and constitute protected speech. (Opp'n (# 53) at 12 n. 2). This is a misapplication of First Amendment law. In light of *Hurely,* it must be sufficient that plaintiff's work express some political, religious, philosophical, or ideological idea, and cannot be required to convey a particular message immediately obvious and understandable to any viewer. The court finds the submitted examples of plaintiff's work, with or without his accompanying declaration, to carry or constitute a political, religious, philosophical, or ideological message, so as to merit the protection of the First Amendment. Moreover, based on the representations made by plaintiff in his affidavit, it is likely that much if not all of his art work could be found to meet the Ninth Circuit's protected merchandise standard. In fact, even if a particularized message were required, which after *Hurley* it is not, plaintiff's work, at least to the extent submitted or represented to this court, would clearly still fall under the First Amendment's protection. "[G]enuine art is specifically produced by an artist attempting to convey a particularized message" and as such, "it is more likely than not that art will contain an expressive

message." *Mastrovincenzo,* 313 F.Supp.2d at 287.

### b. Constitutionality of Sparks's Policy

█ Because the court has declined plaintiff's invitation to apply a presumption of First Amendment protection to all visual arts, the questions remain whether and to what extent defendant has the right to insist on reviewing and pre-approving plaintiff's work prior to allowing its sale in Sparks's city parks. This presents an interesting issue because to the extent that the city is taken at its word, it is not attempting to regulate protected speech at all. Instead, it is simply reserving for itself the right to make the determination of whether speech is or is not protected. If a particular work or good is determined to be protected speech under the First Amendment, then "the inquiry stops there and the vendor is entitled to sell his protected 'speech' in the parks." (Opp'n (# 53) at 11.) However, because this policy could result in the regulation of protected speech—for example, the city might make an incorrect determination—it must be analyzed as a restriction on speech.[5] Because the pre-approval of a city official is required prior to the sale of any protected work, this policy operates as a permit or license requirement.

█ Sparks makes the argument that its policy is a valid content-neutral regulation, and that it imposes no prior restraint on speech "because the content of the message is irrelevant in determining the right to sell protected merchandise." (Opp'n (# 53) at 11.) However, "[a] prior restraint exists when the enjoyment of protected expression is contingent upon the approval of government officials."

*Baby Tam & Co., Inc. v. City of Las Vegas,* 154 F.3d 1097, 1100 (9th Cir.1998) (citing *Near v. State of Minnesota ex rel Olson,* 283 U.S. 697, 713, 51 S.Ct. 625, 75 L.Ed. 1357 (1931)). Such is the case when a permit or license requirement places unbridled discretion in the hands of a government official. *See City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (citations omitted). Moreover, "[i]t is well-settled ... that even content-neutral time, place, and manner regulations may not confer unbridled discretion on the licensing authority, so as to stifle free expression." *Southern Oregon Barter Fair v. Jackson County, Oregon,* 372 F.3d 1128, 1138 (9th Cir.2004) (citing *Thomas v. Chicago Park Dist.,* 534 U.S. 316, 323, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002); *Forsyth County, Ga. v. Nationalist Movement,* 505 U.S. 123, 130–133, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992); *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 153, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Cox v. Louisiana,* 379 U.S. 536, 554–58, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Am. Civil Liberties Union of Nevada v. City of Las Vegas,* 333 F.3d 1092, 1106–08 (9th Cir.2003)). In fact, such restrictions must "contain adequate standards to guide the official's discretion and render it subject to effective judicial review." *Thomas,* 534 U.S. at 323, 122 S.Ct. 775. A regulation without objective standards places the permitting and licensing decisions at the whim of city officials, enabling them to favor some speakers while suppressing others. *Southern Oregon Barter Fair,* 372 F.3d at 1138. While prior restraints are not per se unconstitutional, "the Supreme Court has repeatedly stated that '[a]ny system of prior restraint' bears a 'heavy presumption

---

5. Given that defendant has demonstrated its intention to apply the Ninth Circuit's standard for protected merchandise in a narrow manner that does not comport with constitu-

tional principles, this is not merely a theoretical possibility, but rather a matter of genuine concern for the court.

against its constitutional validity.' " *Baby Tam,* 154 F.3d. at 1100 (quoting *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)). The question is whether the standards are "so imprecise that discriminatory enforcement is a real possibility." *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1051, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). Because defendant's policy allows people to sell items in its typical city parks only if the items for sale are protected by the First Amendment, the determination of which is made by Sparks's city officials, this policy is properly analyzed as a prior restraint.

Here, the city's policy is to "allow an individual (e.g. the Plaintiff) to sell (his or anyone else's) paintings in the CITY's 'typical' parks if the painting offered for sale conveys a religious, political, philosophical or ideological 'message'." (Opp'n (# 53) at 5.) While the city claims it "does not make any inquiry into the content of the 'message,' " a person seeking to sell any goods or merchandise as protected speech must obtain a determination from the city's staff that his goods or merchandise are in fact protected speech. (*Id.* at 5–6.) The city's officials apparently have been instructed to obtain a legal opinion before granting or denying any request seeking such a determination. (*Id.* at 6.) The standard used by the city to determine whether particular goods or merchandise present "a religious, political, philosophical or ideological message is based on common sense and the plain meanings of the four categories." (*Id.* at 7.) Defendant explains that "[s]ome messages will be patently displayed on goods and merchandise, while other messages will be derived from meanings or words or symbols (e.g., the symbol of a whale for Greenpeace's 'save the whales' environmental movement)." (*Id.*) According to defendant, "[t]here are no limiting criteria or standards, which could result in incorrect determinations." As such, defen-

dant in effect has conceded that its officials have nearly unbridled discretion in determining whether a particular work is protected by the First Amendment. Because the city has not delineated any objective standards, its officials could easily interpose their personal judgments in a manner inimical to the protection of First Amendment rights. Although defendant has claimed that common sense and the plain meaning of the categories will guide the decision makers, this can hardly be considered narrow, objective, and definite criteria. Not only are defendant's standards imprecise, they are admittedly non-existent, making the possibility of discriminatory enforcement very real indeed. *See Gentile,* 501 U.S. at 1051, 111 S.Ct. 2720. Moreover, as discussed above, defendant has demonstrated its intention to apply the Ninth Circuit's protected merchandise standard in a narrow, particularized manner that will certainly restrict First Amendment protected expression. As such, this court finds that defendant's pre-approval scheme operates as an unconstitutional prior restraint on speech.

Accordingly, to the extent that plaintiff's motion for partial summary judgment (# 50) requested a finding that his art work is constitutionally protected and that defendant's pre-approval policy is unconstitutional, the motion is granted. To the extent plaintiff wanted the court to hold that all visual art is per se constitutionally protected, the motion is denied.

### 3. Motion for Partial Summary Judgment as to Victorian Square (# 55)

Plaintiff also has moved for partial summary judgment with regard to Victorian Square (# 55). As with his motion pertaining to Sparks's city parks, plaintiff contends that "[t]he material dispute between the parties centers on the following issue:

Whether, as a pre-condition to White's selling his paintings in Victorian Square, [Sparks] may insist on reviewing them one by one to determine whether each painting offered for sale conveys a religious, political, philosophical or ideological message." (Pl.'s Mot. for Partial Summ. J. (# 55) at 2 (internal quotations omitted).) Because both the court's refusal to find all visual art per se protected by the First Amendment and its decision that plaintiff's artwork satisfies the Ninth Circuit's standard for protected merchandise apply with equal force to this motion, here the court need only consider the constitutionality of Sparks's Victorian Square pre-approval scheme.

 Under Sparks's Roadway and Sidewalk Vendors Ordinance, SMC § 5.59 *et seq.*,[6] it is "unlawful for any vendor to sell, display or offer for sale any food, beverage, goods, services or merchandise on the public streets or sidewalks or other city-owned property without first having obtained a permit in accordance with this chapter." SMC 5.59.020(A). According to defendant, this ordinance applies only to Victorian Square. (Opp'n (# 58) at Ex. N.) Again, as with the ordinance prohibiting the sale of merchandise in Sparks's city parks, the city has in effect interlineated a caveat that this prohibition applies only to the sale of "unprotected goods or merchandise." (*Id.* at 7.) According to the city:

it will allow an individual (e.g. Plaintiff), without obtaining a business license or Victorian Square Vendor's Permit, to sell (his or anyone else's) paintings in Victorian Square if the painting offered for sale conveys a religious, political, philosophical or ideological "message" and is intrinsically intertwined with a protected message the speaker is attempting to convey.

(*Id.* at 7.) It seems that with regard to Victorian Square, the city's policy is somewhat more defined.[7] In order to sell protected work in Victorian Square, plaintiff would have to file an application with the city. (*Id.*) The City Manager then would appoint a committee of no fewer than three people to determine whether each painting conveys a "message." (*Id.*) The committee would consist of the Cultural Arts Coordinator, the City Attorney or an Assistant City Attorney, and an employee of the redevelopment agency. (*Id.*) The City Manager also could appoint additional people to the committee. (*Id.*) Once the committee made the determination that a painting or other item contains a qualifying message and therefore constitutes protected speech, then permission to sell in Victorian Square would be granted. (*Id.* at 27.) If, however, no qualifying message is found, the vendor could appeal to the City Manager. (*Id.*)

As for how the determination is made, defendant again explains that "whether goods or merchandise presents [*sic*] a reli-

---

**6.** Again, the court only was asked to consider the constitutionality of Sparks's policy of excepting First Amendment protected speech from the application of this ordinance and the pre-approval scheme apparently created in order to implement that policy. The court was not asked to consider the constitutionality of the underlying ordinance without the interlineated policy. Accordingly, the court expresses no opinion as to whether this ordinance standing alone would pass constitutional muster.

**7.** Plaintiff, in his reply, notes that "[e]verything suggests that Sparks is making up its regulatory scheme as it goes along." (Reply (# 62) at n. 1.) While the court would tend to agree, because plaintiff has moved for summary judgment on the existence of a policy for which there is no proof other than the statements advanced by the defendant in litigation, the court can only examine the policy and regulatory scheme as represented for purposes of determining its constitutionality.

gious, political, philosophical or ideological message is based on common sense and the plain meanings of the four categories." (*Id.* at 9.) The city acknowledges that "[t]here are no limiting criteria or standards, which could result in incorrect determination," (*id.*) but does state that dictionary definitions of the words religious, political, philosophical, and ideological "provide reasonable, objective standards for governmental entities ... to follow." (*Id.* at 26.) Sparks further claims that were it "to create additional standards, it would run the risk of unconstitutionally limiting the sale of expression in public fora." (*Id.*) However, the city does now recognize that it "must make a careful, but liberal, analysis of any 'message' presented by merchandise offered for sale, lest its conclusions be underinclusive and violative of 'free speech' rights." (*Id.*)

While Sparks, in opposition to this motion for partial summary judgment, has provided the court with more detail as to its pre-approval scheme, these details are insufficient to rehabilitate the scheme from the flaws outlined above. The city's concern that it not add any additional standards which might result in restricting protected speech will be taken as genuine; however, with nothing to guide its decision makers but a dictionary, the policy's risk of discriminatory enforcement is simply too high. This is amplified by the fact that, at least to the knowledge of the court, no written explanation, or guideline for enforcement of the policy even exists. Such unlimited discretion places an unconstitutional prior restraint on protected speech. Moreover, while defendant appears to be backing off from its excessively narrow interpretation of the Ninth Circuit's protected merchandise standard, it still insists that in order to be sold, an item must convey a message "that a reasonable person viewing the merchandise will be able to read and recognize ... merely by observing the merchandise." (*Id.* at 23.)

In fact, defendant claims that "[a] hidden or implied 'message' is no 'message' at all." (*Id.*) Because the Supreme Court in *Hurley* rejected any "particularized message" requirement, defendant's interpretation and application of the Ninth Circuit's protected merchandise standard operates as an unconstitutional prior restraint on speech.

Accordingly, to the extent that plaintiff's motion for partial summary judgment (# 55) requested a finding that his artwork is constitutionally protected and that defendant's pre-approval policy is unconstitutional, the motion is granted. To the extent plaintiff wanted the court to hold that all visual art is per se constitutionally protected, the motion is denied.

### III. *Conclusion*

Accordingly, **IT IS ORDERED** that defendant's motion to strike (# 57) be *DENIED*.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike (# 60) be *DENIED* as moot.

**IT IS FURTHER ORDERED** that defendant's motion to strike (# 63) be *DENIED* as moot.

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment (# 50) be *GRANTED* in part and *DENIED* in part.

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment (# 55) be *GRANTED* in part and *DENIED* in part.