FIRST DEPARTMENT, JULY, 1986

(July 1, 1986)

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v KENNETH BALLOU, Respondent.—Order of the Supreme Court, New York County (Brenda S. Soloff, J.), entered February 15, 1985, dismissing indictment number SN7239-84, which charged defendant Kenneth Ballou with one count of criminal sale of a controlled substance in the fifth degree (Penal Law § 220.31) and two counts each of criminal possession of a controlled substance in the fifth and seventh degrees (Penal Law § 220.06 [1]; § 220.03), unanimously reversed, on the law, and the indictment reinstated.

Grand Jury testimony by undercover Narcotics Officer Jacques Bouillon and arresting Officer Dominic Patruno disclosed that, on the afternoon of September 21, 1984, defendant Ballou and Gentry Montgomery were approached by Bouillon. Bouillon asked Montgomery and Ballou, who was seated about five feet from Montgomery, whether they had any "angel dust". Montgomery replied that he would not sell Bouillon any angel dust unless Bouillon purchased two packages for $19; one for himself and a second for an unidentified male who had only $6. Thereafter, the unidentified male handed Bouillon $6. Bouillon took one of the dollar bills, added to it $18 of prerecorded buy money and gave the $19 sum to Montgomery. Upon receiving this money, Montgomery walked over to Ballou and spoke with him. Ballou reached into his pocket and handed something to Montgomery. Although Bouillon did not see what was passed between Ballou and Montgomery, he did observe that after making contact with Ballou's hand Montgomery did nothing with his own hands until moments later when he handed one package to the unidentified male, and another to Bouillon himself. It was subsequently ascertained that the package handed Bouillon contained angel dust, otherwise known as phencyclidine, a controlled substance. After concluding the transaction, Bouillon left the scene. Minutes later Officer Petruno arrested Montgomery and Ballou.

Based upon this testimony, the Grand Jury returned the

above-mentioned indictment. In granting defendant's motion to dismiss the indictment, Criminal Term ventured that there was no evidence connecting defendant with the drug transaction or indicating that he was aware of it.

A Grand Jury may indict when there is competent evidence before it legally sufficient to establish that the defendant committed the offense charged. (CPL 190.65 [1].) The Grand Jury is the exclusive judge of the facts with respect to any matter before it *(People v Pelchat,* 62 NY2d 97, 105; CPL 190.25 [5]). Its decision to hand down an indictment may not, therefore, be lightly set aside. Only when the defendant shows clearly that the unexplained, uncontradicted Grand Jury evidence does not permit a conviction by a trial jury may the indictment be dismissed *(People v Valles,* 62 NY2d 36; *People v Dunleavy,* 41 AD2d 717, *affd* 33 NY2d 573). In assessing the legal sufficiency of the evidence underlying the indictment, the court must view the evidence in the light most favorable to the People *(People v Warner-Lambert Co.,* 51 NY2d 295, 299). It may neither resolve factual questions in anticipation of the task properly left for trial *(People v Dunleavy, supra,* at p 717) nor usurp the role of the Grand Jury by substituting its own inferences for those the Grand Jury has drawn *(People v Dordal,* 55 NY2d 954, 956).

In its decision, Criminal Term states that the only evidence before the Grand Jury concerning defendant Ballou was that he was seated about five feet from Montgomery during the time the phencyclidine sale was negotiated, that he conversed with Montgomery, and that he exchanged something with Montgomery which Bouillon did not see. This recitation omits a crucial evidentiary fact, namely, that from the time Montgomery took what Ballou handed him until he gave Bouillon the package containing phencyclidine he did nothing with his hands. From this fact, and the remaining evidence, the Grand Jury was entitled to draw the inference that defendant knowingly possessed phencyclidine, a controlled substance, which he transferred to Montgomery for sale to Bouillon. This is all that is necessary to sustain the subject indictment. It is, of course, possible that Ballou simply chanced to sit near Montgomery while the sale was negotiated, that his conversation with Montgomery was about unrelated matters, and that he only appeared to take something out of his pocket and pass it to Montgomery, but these are merely competing inferences which may not be employed in place of those properly drawn by the Grand Jury. *(See, People v Dordal,* 55 NY2d 954, 956, *supra.)* Moreover, these inferences are not permissible on a

motion to dismiss the indictment where the evidence must be viewed in the light most favorable to the People. *(People v Warner-Lambert Co., supra,* at p 299.) Concur—Murphy, P. J., Sullivan, Ross, Carro and Fein, JJ.