[754 NYS2d 11]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v PAUL HYDE, Respondent.

First Department, January 23, 2003

### APPEARANCES OF COUNSEL

*Stanley R. Kaplan* of counsel (*Joseph N. Ferdenzi* on the brief; *Robert T. Johnson, District Attorney*, Bronx County, attorney), for appellant.

*Rosemary Herbert* of counsel (*Richard M. Greenberg, Office of the Appellate Defender*, attorney), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

This appeal, from the dismissal of an indictment for legal insufficiency, presents the issue of whether the People's evidence before the grand jury established defendant's possession of drugs, drug paraphernalia, a gun and ammunition recovered from an apartment or, as the motion court held, merely his presence in that apartment.

A transcript of the grand jury proceedings reveals the following. On July 11, 2001, at approximately 1:45 P.M., Sergeant Gibson, accompanied by Police Officers LaMazza and Lisa, responded to a radio run of shots being fired at apartment 10B, 30 Richmond Plaza in the Bronx. The sergeant knocked on the door several times without a response, although he could hear "footsteps and scuffling inside of the apartment." A woman inside the apartment shouted, "hold on" several times. Finally, codefendant Deborah Barksdale, who resided in the apartment, opened the door, partially nude, with a towel draped around her. The officers entered the apartment and asked if anyone else was there. Barksdale indicated that her cousin was inside. At that point, defendant, pulling up his trousers, barefoot, sockless and shirtless, emerged from the left rear bedroom.

In searching the apartment, described as "very messy * * * very dirty, [and] very unkept [*sic*]," to see if anyone else was present, the sergeant entered the bedroom, admittedly Barksdale's, from which defendant exited and observed a dresser

with drawers with missing "faces." Inside one of the drawers, in open view, the sergeant observed a plate on which sat an empty plastic bag and another bag containing a substance that appeared to be cocaine. The bag's contents, later tested, contained cocaine and weighed in excess of nine ounces. Officer Lisa, directed into the bedroom by Sergeant Gibson, also recovered a bag containing 19 black-topped vials of crack cocaine (10 of the vials were analyzed and tested positive for cocaine) from under the mattress. Officer Lisa also recovered a Bacardi crack pipe, crack/cocaine residue mirror, razor blade, glass/crack pipe and two scrapers, all containing what appeared to be crack cocaine residue, from the bedroom. One of the pipes tested positive for cocaine. Officer Lisa also retrieved a .45 caliber Ruger handgun, in "fair" condition, loaded with four rounds of ammunition, from a handbag hanging off the doorknob of the door to the bedroom. As confirmed by photographs of the bedroom, the gun was visible in the bag, which was opened.

Officer LaMazza noticed a plate in the kitchen with a white powdery substance that appeared to be cocaine and a razor blade on it. The white powder tested positive for cocaine as did the residue on the razor blade. Drug paraphernalia, consisting of a white jar with a lid, 32 green tops, 47 blue tops, 81 crack vials and 149 Ziploc bags, was also recovered from the kitchen and vouchered. The officers later discovered that the apartment was neither defendant's home nor place of business.

Defendant appeared before the grand jury, testifying that on the day in question he went to the apartment to purchase drugs, as he did regularly. After making his purchase, two vials of crack cocaine for $10, he crushed the crack cocaine, mixed it with marijuana, rolled it up in paper and smoked it in the living room. About 20 to 30 minutes later, the police arrived. Any drugs found in the apartment did not belong to him. He had never been in either of the bedrooms in the apartment and was wearing a pair of shorts and a shirt the entire time. He had not engaged in sex with Ms. Barksdale. He "wasn't paying attention to the kitchen" and thus did not see the razor blade or drugs recovered there, although, if he looked, he could see into the kitchen.

The People charged the grand jury on constructive possession but not the drug factory presumption under Penal Law § 220.25 (2). In dismissing the indictment, the court held that the People had failed to establish the element of dominion and control, finding a lack of any evidence that defendant "had

control over Barksdale's bedroom, the apartment or Barksdale" or that he assisted her in the possession of the contraband. According to the motion court, defendant's only act "was being present in the bedroom of the apartment naked and then coming into the hallway putting on his pants." Since we find that in so concluding the motion court failed to give the People's evidence the benefit of every reasonable inference, we reverse.

"Legally sufficient evidence" is defined in CPL 70.10 (1) as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof." With respect to an indictment (*see* CPL 190.65 [1]), the proper standard for reviewing the sufficiency of the evidence is whether, when "viewed in the light most favorable to the People, if unexplained and uncontradicted, [it] would be sufficient to warrant conviction by a trial jury" (*People v Manini*, 79 NY2d 561, 568-569). In assessing sufficiency when the evidence before the grand jury is wholly circumstantial, a reviewing court's inquiry is limited to "whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes" (*People v Deegan*, 69 NY2d 976, 979). "That other, innocent inferences could possibly be drawn from the facts is irrelevant * * * as long as the Grand Jury could rationally have drawn the guilty inference" (*id.*).

In considering the sufficiency of grand jury evidence, a reviewing court "may neither resolve factual questions in anticipation of the task properly left for trial * * * nor usurp the role of the Grand Jury by substituting its own inferences for those the Grand Jury has drawn" (*People v Perez*, 269 AD2d 321, 322, *lv denied* 95 NY2d 801, quoting *People v Ballou*, 121 AD2d 861, 862, *lv denied* 68 NY2d 809). A reviewing court may not examine the adequacy of the proof to establish reasonable cause, a determination that involves the weight or quality of the proof (*People v Reyes*, 75 NY2d 590, 593; *see People v Jennings*, 69 NY2d 103, 115). "[A]ll questions as to the quality or weight of the proof should be deferred" (*People v Jennings*, *supra* at 115).

The motion court dismissed the indictment because of its view that all that the evidence showed was defendant's presence in the apartment. From that, the court concluded that the People had not shown that defendant had constructive possession of the seized evidence or that he had acted as Barksdale's accomplice in possessing them. With respect to constructive possession, "the rule has long been that to support a charge

that a defendant was in constructive possession of tangible property, the People must show that the defendant exercised 'dominion or control' over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized" (*People v Manini, supra*, 79 NY2d 561, 573; *see* Penal Law § 10.00 [8]). Proof of constructive possession may be shown circumstantially (*People v Torres*, 68 NY2d 677). That a defendant neither owns nor leases the area where the contraband is found does not preclude a finding of constructive possession since possession may be joint (*People v Tirado*, 38 NY2d 955; *People v Bundy*, 235 AD2d 334, 337, *affd* 90 NY2d 918 ["proof of defendant's exercise of dominion and control over the contraband was not precluded by proof that co-defendant and his brother also participated in control over the apartment and its contents"]).

Here, defendant was not merely present. He had been in a private room, the bedroom, of an apartment to which he had gone, ostensibly, according to his account, to purchase drugs. While in the bedroom of that apartment, he had been in close proximity to drugs plainly exposed in an open drawer, visible drug paraphernalia and a loaded gun in an open bag. It is sufficient that the contraband was readily accessible and available. And, although the "drug factory" presumption (*see* Penal Law § 220.25 [2]) was not charged, clearly defendant had free access to an apartment, with its open display of drugs and drug paraphernalia, that was obviously used for such purpose.

In affirming this Court's determination of sufficiency with respect to the defendant's dominion and control over contraband, the Court of Appeals, in *People v Bundy* (90 NY2d, *supra* at 920), held that "a reasonable jury could conclude that only trusted members of the [drug] operation would be permitted to enter an apartment containing a large cache of drugs, money and weapons in plain view" (*see People v Collado*, 267 AD2d 122, *lv denied* 94 NY2d 917; *People v Abreu*, 261 AD2d 297, *lv denied* 93 NY2d 1013; *People v Doleo*, 261 AD2d 194, *lv denied* 93 NY2d 1017). Significantly, *Bundy* and its progeny all involved a review of evidence after trial. The standard of proof required for a grand jury indictment is, of course, less than that required for trial (*see People v Jennings, supra*, 69 NY2d at 115; *People v Warner-Lambert Co.*, 51 NY2d 295, 299, *cert denied* 450 US 1031).

In the circumstances presented, it strains credulity that defendant would not have been aware of the contraband in plain view in the bedroom. And, while defendant denied being in the

bedroom, he testified that he could see the kitchen from his position. Moreover, that defendant was charged with acting in concert with Barksdale provides an independent basis to sustain the sufficiency of the grand jury presentation. Complicity, as with any other element of a crime, can be shown circumstantially (see People v Rossey, 89 NY2d 970, 971-972). Defendant's presence in a private area of the apartment, the state of undress of both defendant and Barksdale, and defendant's admitted use of drugs in the apartment are factors from which an inference may be drawn that defendant was more than a mere visitor.

In our view, sufficient evidence was adduced before the grand jury to sustain the indictment. While it may be that the People will have a long road to travel to convince a petit jury of defendant's guilt, our inquiry is limited to legal sufficiency. It is not the function of a reviewing court to "examine the adequacy of the proof to establish reasonable cause 'since that inquiry is exclusively the province of the [g]rand [j]ury' " (People v Cedeno, 252 AD2d 307, 310, lv dismissed 93 NY2d 1015, quoting People v Colon, 137 AD2d 440, 441).

Accordingly, the order of the Supreme Court, Bronx County (Phylis Skloot Bamberger, J.), entered December 4, 2001, dismissing an indictment charging defendant with criminal possession of a controlled substance in the first, third and seventh degrees, criminal possession of a weapon in the fourth degree, criminally using drug paraphernalia in the second degree and unlawful possession of pistol or revolver ammunition, should be reversed, on the law, the motion denied, the indictment reinstated and the matter remanded for further proceedings.

MAZZARELLI, J.P., SAXE, ROSENBERGER and LERNER, JJ., concur.

Order, Supreme Court, Bronx County, entered December 4, 2001, reversed, on the law, the motion denied, the indictment reinstated and the matter remanded for further proceedings.