OPINION OF THE COURT
Marc J. Whiten, J.
*792 Close to a half century ago, French-Algerian author, philosopher and Nobel Laureate Albert Camus wrote, “Without freedom, no art; art lives only on the restraints it imposes on itself, and dies of all others.”[1] The court is now called upon to consider here the extent to which the State might legitimately impose restraints on art, as sold to the public in the streets of New York City, a municipality widely regarded as a center of art and expressive freedom. The defendant, Chen Lee, is charged with selling coasters on the street without a vendor’s license in violation of Administrative Code of the City of New York § 20-453. He now moves to dismiss the accusatory instrument, arguing that his alleged conduct is protected by the First Amendment of the United States Constitution, and that the complaint itself is facially insufficient.
In his motion, defendant claims that the items he is charged with selling are not “coasters,” but are instead small tiles with photographs displayed on them, and that these items constitute “non-verbal artistic expression.” Relying on Bery v City of New York (97 F3d 689 [2d Cir 1996]), defendant argues that the licensing requirements set forth in Administrative Code § 20-453 cannot be constitutionally enforced against him, because he was selling artwork. Defendant additionally argues that, pursuant to People v Dumas (68 NY2d 729 [1986]), the allegations set forth in the complaint do not establish reasonable cause to believe that defendant’s conduct required him to be licensed as a vendor.
Defendant is charged with a violation of New York City’s General Vendors Law (Administrative Code tit 20, ch 2, subch 27) which regulates the sale of goods and services in public places in order to preserve public health, safety and welfare. A general vendor is defined as one who “hawks, peddles, sells, leases or offers to sell or lease, at retail” goods and services other than food in a public space (Administrative Code § 20-452 [b]). Section 20-453 of the Administrative Code prohibits general vending without first obtaining a license from the Department of Consumer Affairs. An exception in the code explicitly permits the sale of newspapers, periodicals, books, pamphlets or other similar written material, but general vendors selling any other things may be fined, imprisoned for up to three months, or forced to relinquish their merchandise (Administrative Code §§ 20-468, 20-469, 20-472).
*793 Facial Sufficiency
Defendant’s facial insufficiency argument is without merit. An information is facially sufficient if it meets three requirements. First, it must substantially conform to the formal requirements of CPL 100.15. Additionally, the factual portion and any accompanying depositions must provide reasonable cause to believe the defendant committed the offense charged, as well as nonhearsay factual allegations of an evidentiary character which, if true, establish every element of the offense charged and defendant’s commission thereof (CPL 100.15 [3]; 100.40 [1]; see People v Dumas, 68 NY2d 729 [1986]; see also People v Alejandro, 70 NY2d 133 [1987]).
While the requirement of nonhearsay allegations (the prima facie requirement) has been described as a “much more demanding standard” than a showing of reasonable cause alone {People v Alejandro, 70 NY2d at 139, quoting 1968 Rep of Temp Commn on Rev of Penal Law and Crim Code, Introductory Comments, at xviii), it is nevertheless a much lower threshold than the “trial” burden of proof, beyond a reasonable doubt (People v Henderson, 92 NY2d 677, 680 [1999]; People v Hyde, 302 AD2d 101 [1st Dept 2003]). Thus, “[t]he law does not require that the information contain the most precise words or phrases most clearly expressing the charge, only that the crime and the factual basis therefor be sufficiently alleged” (People v Sylla, 7 Misc 3d 8, 10 [2d Dept 2005]). Additionally, where the factual allegations contained in an information “give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading” (People v Casey, 95 NY2d 354, 360 [2000]; see also People v Konieczny, 2 NY3d 569 [2004]; People v Jacoby, 304 NY 33, 38-40 [1952]; People v Knapp, 152 Misc 368, 370 [1934], affd 242 App Div 811 [1934]; People v Shea, 68 Mise 2d 271, 272 [1971]; People v Allen, 92 NY2d 378, 385 [1998]; People v Miles, 64 NY2d 731, 732-733 [1984]). In this case, the nonhearsay factual allegations clearly set forth the offense allegedly committed, and give the defendant notice sufficient to prepare a defense while ensuring that he would not be tried twice for the same offense. Accordingly, this court finds that the information is facially sufficient.
First Amendment
Defendant’s First Amendment argument warrants more detailed consideration. It is well settled that for purposes of *794 First Amendment analysis, the Constitution protects more than written or spoken words as mediums of expression, and instead includes “pictures, films, paintings, drawings, and engravings” (Kaplan v California, 413 US 115, 119 [1973]), as well as music (Ward v Rock Against Racism, 491 US 781 [1989]), theater (Southeastern Promotions, Ltd. v Conrad, 420 US 546 [1975]), and DVD recordings (People v Fucile, NYLJ, May 13, 2004, at 19, col 1 [Crim Ct, NY County]). The Second Circuit has held that “[v]isual art is as wide ranging in its depiction of ideas, concepts and emotions as any book, treatise, pamphlet or other writing, and is similarly entitled to full First Amendment protection” (Bery v City of New York, 97 F3d 689, 695 [2d Cir 1996]).
However, not every physical object with aesthetically engaging aspects is entitled to First Amendment protection (see People v Saul, 3 Misc 3d 260 [Crim Ct, NY County 2004] [decks of playing cards bearing photographic images of military and political figures associated with the Iraq war are not art, and, hence, not exempt from licensing requirement]). To the contrary, “[c]ourts must determine what constitutes expression within the ambit of the First Amendment and what does not. This surely wall prove difficult at times, but that difficulty does not warrant placing all visual expression in limbo outside the reach of the First Amendment’s protective arm” (Bery v City of New York, 97 F3d 689, 696 [1996]). In Bery v City of New York, the plaintiffs-appellants were visual artists who successfully sought an injunction against enforcement of Administrative Code § 20-453 on the basis that the expressive character of their artwork warranted First Amendment protection.
Under the holding in Bery, this court must first determine whether the sale of defendant’s goods is entitled to First Amendment protection, or, more precisely, whether the expressive content of defendant’s merchandise is such that First Amendment scrutiny is automatically applied to regulations that restrict their sale or dissemination. The framework for this determination, as set forth in Mastrovincenzo v City of New York (435 F3d 78 [2d Cir 2006]), involves several sequential steps. First, the court must determine whether or not the sale of defendant’s goods is presumptively entitled to First Amendment protection, with the understanding that only certain items — paintings, photographs, prints and sculptures — trigger automatic review. If the item in question does not fall within one of these four classifications, its sale should be treated as potentially expressive and “[o]nce a court has determined that *795 an item possesses expressive elements, it should then consider whether that item also has a common non-expressive purpose or utility” (.Mastrovincenzo, 435 F3d at 95). However, “[t]he fact that an object serves some utilitarian purpose does not . . . automatically render it non-expressive; rather, upon a finding that the item in question possesses some common non-expressive purpose, a court should then determine whether that non-expressive purpose is dominant or not” (id.).
In considering whether an object’s expressive purpose is dominant, courts
“may gauge the relative importance of the items’ expressive character by comparing the prices charged for the decorated goods with the prices charged for similar non-decorated goods. If a vendor charges a substantial premium for the decorated work and/or does not sell the item without decoration, such facts would bolster his claim that the items have a dominant expressive purpose” (id. at 96).
Similarly, items that have only been modified or embellished with minor additions might be correctly classified as being commercial goods with expressive character that is not dominant. Other factors a court might apply include whether an artist’s motivation for producing and selling his wares is a desire to communicate ideas, and whether a vendor (if other than the artist) claims to be engaging in self-expression through the sale of the items in question. These factors are not mandatory, and, as an aggregate, they are not exhaustive; each case must be considered on its own merits.
Turning to the merchandise offered for sale by defendant, this court has performed an in camera inspection of the items seized from defendant by the police. This court reviewed 17 items, which are flat, rectangular tiles approximately four inches by four inches in size, made of a heavy ceramic. The edges are rough and somewhat uneven in texture, and the backs of the tiles are unfinished but partially covered by a thin layer of what looks to be cork. The decorated top surfaces of the tiles are covered by various photographic images, including a likeness of the deceased American actress Marilyn Monroe, local sports arenas, and the storefront of Vesuvio Bakery. While it is clear that most, if not all, of the images on the tiles are not original photographs taken by the defendant, many renowned modern artists, such as Andy Warhol, have utilized reproductions of popular images to great acclaim. *796 The tiles appear to be display items not readily suitable for use as coasters, or for any other practical commonplace purpose. Accordingly, considering these items in light of the standards set forth previously, I find that they have a purpose that is exclusively expressive, and, that, as such, they warrant protection as expressive art.
Having found that the expressive content of defendant’s creations is sufficient to warrant protection under the First Amendment, the court must now consider whether Administrative Code § 20-453 as applied to defendant can withstand the corresponding First Amendment scrutiny. As a content-neutral regulation,[2] Administrative Code § 20-453 should be subjected only to intermediate scrutiny by which a court must assess whether such a time, place and manner restriction is reasonable, narrowly tailored to serve a significant government interest, and leaves open ample other outlets for communication of the information (Mastrovincenzo, 435 F3d at 97-98, citing Hobbs v County of Westchester, 397 F3d 133, 148 [2d Cir 2005]).
In considering this question, the Second Circuit determined that “[t]here can be no doubt that New York City’s avowed objectives in enforcing its licensing requirement, such as reducing sidewalk and street congestion in a city with eight million inhabitants, constitute ‘significant government interests’ ” (Mastrovincenzo, 435 F3d at 100) and further found that “a fixed-ceiling licensing requirement represents a ‘reasonable’ means of controlling that congestion” (id.), ultimately concluding that Administrative Code § 20-453 is narrowly tailored to achieve the objective of reducing urban congestion (id. at 105). However, by consenting to a permanent injunction, the City of New York has agreed not to enforce the licensing requirements set forth in Administrative Code § 20-453 in relation to the general vending of “any paintings, photographs, prints and/or sculpture” (Permanent Injunction on Consent, dated Oct. 21, 1997; Bery v City of New York, US Dist Ct, SD NY, 94 Civ 4253 [MGC], Oct. 30, *797 1997). Since the court now finds that the items offered for sale by defendant constitute artwork within the meaning of the Bery injunction, and that they do not have any common nonexpressive purpose, the City is bound by the court-approved agreement in Bery. Accordingly, defendant’s motion to dismiss is granted, and all other relief sought is denied as moot.

. Socialism of the Gallows, reprinted in Resistance, Rebellion and Death, at 171 (NY Knopf 1961).

. Another threshold consideration is already settled, in that Administrative Code § 20-453 has been held to be a content-neutral regulation because it serves a purpose unrelated to the content of the regulated expression, that purpose being reducing pedestrian congestion, maintaining the tax base and economic viability of the City, and preventing the sale of stolen or defective merchandise (Mastrovincenzo, 435 F3d at 97); there is nothing presently before this court to disturb this holding.