[887 NYS2d 832]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v AMINATA NDIAYE, Defendant.

Criminal Court of the City of New York, New York County, October 16, 2009

## APPEARANCES OF COUNSEL

*Legal Aid Society* (*Steven Banks* and *Tracey Kim* of counsel), for defendant. *Robert M. Morgenthau, District Attorney*, New York City (*Megan McDonald* of counsel), for plaintiff.

## OPINION OF THE COURT

ROBERT M. MANDELBAUM, J.

Charged with the unlicensed sale of costume jewelry on a public street, defendant contends that prosecution here violates her First Amendment right to free speech. Because New York City's licensing scheme constitutes a reasonable time, place or manner restriction on defendant's otherwise unfettered right to vend her merchandise, the motion to dismiss must be denied.[1]

## I.

New York City Administrative Code § 20-453 (the License Law) provides that

> "[i]t shall be unlawful for any individual to act as a general vendor without having first obtained a license . . . except that it shall be lawful for a general vendor who hawks, peddles, sells or offers to sell, at retail, only newspapers, periodicals, books, pamphlets or other similar written matter, but no other items required to be licensed . . . to vend such without obtaining a license therefor."[2]

A "[g]eneral vendor" is a person who, in a public space, "hawks, peddles, sells, leases or offers to sell or lease, at retail, goods or services, including newspapers, periodicals, books, pamphlets or other similar written matter," other than food, pedicab services, or the shining of shoes (Administrative Code of City of NY § 20-452 [b]; *see also* Administrative Code of City of NY § 20-452 [a]; § 17-306 [c]; § 20-229).

Characterizing her jewelry as "wearable sculpture," defendant argues that New York City's licensure requirement

---

1. This court previously rendered an oral decision denying defendant's motion to dismiss. This opinion serves to explain the basis for the court's prior ruling.

2. The New York City Council added the exemption for written matter in 1982, finding that "it is consistent with the principles of free speech and freedom of the press to eliminate as many restrictions on the vending of written matter as is consistent with the public health, safety and welfare" (Local Law No. 33 [1982] of City of NY § 1).

unconstitutionally impinges on her right to free expression.[3] In essence, defendant asks this court to proclaim, as a matter of law, that the jewelry she seeks to sell is "art," and therefore exempt from the licensing scheme generally applicable to sellers of merchandise on the public streets. But because art is "a famously malleable concept the contours of which are best defined not by courts, but in the proverbial 'eye of the beholder' " (*Mastrovincenzo v City of New York*, 435 F3d 78, 90 [2d Cir 2006]), the court declines to assume the mantle of art critic (*see also Bery v City of New York*, 97 F3d 689, 696 [2d Cir 1996] ["the matter does not lend itself to judicial determination"]; *but see People v Saul*, 3 Misc 3d 260, 265 [Crim Ct, NY County 2004] [playing cards bearing photographic images of military and political figures associated with the war in Iraq are not "artistically noteworthy" and therefore "do not qualify as art"]).

Contrary to defendant's contention, *Bery v City of New York* does not require that the court inspect the items seized at the time of her arrest—or, even less appropriately, other items that defendant maintains are similar to those she is actually charged with selling—before making a determination that the License Law may constitutionally be applied to her. Neither the Constitution nor the case law demand an in camera inspection or pretrial hearing on defendant's motion (*but see People v Chen Lee*, 19 Misc 3d 791 [Crim Ct, NY County 2008]).

In *Bery*, the court, in granting a preliminary injunction prohibiting enforcement of the License Law against the plaintiffs, held that certain visual artists were likely to prevail on the merits of their claim that they were entitled to sell their paintings, photographs and sculpture on the streets of New York City without the need to obtain a license. In reaching its conclusion, the court opined that visual art was "entitled to full First Amendment protection" (*Bery*, 97 F3d at 695), and concluded that the licensing requirement did not satisfy constitutional criteria for a permissible time, place or manner restriction on speech (*see id.* at 697-698). Rather than "contesting this preliminary determination in a trial on the merits"

---

**3.** An information is defective, and therefore subject to dismissal, when "[t]he statute defining the offense charged is unconstitutional or otherwise invalid" (CPL 170.35 [1] [c]; *see also* CPL 170.30 [1] [a], [f] [authorizing dismissal of an information when "(t)here exists some other jurisdictional or legal impediment to conviction of the defendant for the offense charged"]).

(*Mastrovincenzo*, 435 F3d at 86), New York City consented to a permanent injunction (the *Bery* injunction) prohibiting enforcement of the licensing law against vendors of "paintings, photographs, prints and/or sculpture" (permanent injunction on consent dated Oct. 21, 1997, *Bery v City of New York*, US Dist Ct, SD NY, 94 Civ 4253 [MGC], Oct. 30, 1997).

In 2006, the Second Circuit in *Mastrovincenzo* rejected a similar challenge to enforcement of the License Law—this time brought by graffiti artists who painted on clothing. After recounting the history of the *Bery* litigation, the *Mastrovincenzo* court noted that *Bery*'s analytic framework had been the subject of criticism (*see Mastrovincenzo*, 435 F3d at 93; *see also White v City of Sparks*, 341 F Supp 2d 1129, 1139 [D Nev 2004] ["Applying such a blanket presumption of protected status (as did *Bery*) would not only be unnecessary . . . but would also be out of step with . . . the First Amendment's fundamental purpose—to protect *expression*"], *affd* 500 F3d 953 [2007]; *State v Chepilko*, 405 NJ Super 446, 464-465, 965 A2d 190, 201-202 [App Div 2009] [agreeing with criticism of *Bery*'s holding that any business activity involving the taking and sale of photographs automatically qualifies for First Amendment protection]; Genevieve Blake, Comment, *Expressive Merchandise and the First Amendment in Public Fora*, 34 Fordham Urb LJ 1049, 1071 [2007] ["Bery effectively removed expressivity from the analysis of paintings, photographs, prints, and sculpture, even as it vaunted the expressive potential of those media. Centuries of aesthetic scholarship and discourse are flattened to a legal presumption" (citations omitted)]).

Indeed, the language used throughout its opinion seems to indicate that the *Mastrovincenzo* court was itself deeply skeptical of the correctness of its earlier holding in *Bery* (*see Mastrovincenzo*, 435 F3d at 85 ["Despite a suggestion" in *Bery*]; *id.* ["the *Bery* court offered the following faint consolation"]; *id.* at 87 n 6 ["the question presented is broader than that suggested by" *Bery*]; *id.* at 92 ["notwithstanding, we are instructed, the 'myopic' perspective of those philistines who recognize art only in its 'conventional shapes and forms' " (quoting *Bery*, 97 F3d at 695)]; *id.* at 93 [the *Bery* court "airily noted"]; *id.* ["Whatever may be said of *Bery*'s analytic framework"]; *id.* ["the 'difficult' assignment left for us by the *Bery* Court"]; *id.* at 94 ["the difficult circumstances created by our open-ended ruling in *Bery*"]; *id.* at 99 n 16 ["We now resolve (an) ambiguity," which was expressed in "dicta" in *Bery*]; *id.* at 101 ["Although we sug-

gested in *Bery*"]; *id.* at 102 ["We are not bound here by our conclusion in *Bery*"]). Nevertheless, in the end the *Mastrovincenzo* court felt constrained by its earlier holding, noting that "it remains the law of the Circuit until and unless it is effectively superseded by decisions of the Supreme Court or formally revisited by the Court sitting *en banc*" (*id.* at 93).

A New York court is, of course, not bound by the interpretation of a federal constitutional question by the lower federal courts, although such interpretation "may serve as useful and persuasive authority" (*People v Kin Kan*, 78 NY2d 54, 60 [1991]; *see also Flanagan v Prudential-Bache Sec.*, 67 NY2d 500, 506 [1986]).[4] But even applying the Second Circuit's analysis, it is clear that defendant's claim must fail.

Defendant is in no way prevented from creating, displaying, or publicizing her wares—only from selling them. To be sure, that art is sold does not deprive it of the First Amendment protection it would otherwise enjoy (*see City of Lakewood v Plain Dealer Publishing Co.*, 486 US 750, 756 n 5 [1988]; *Riley v National Federation of Blind of N. C., Inc.*, 487 US 781, 801 [1988] ["a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak"]). But the question here, properly framed, is not simply whether defendant's jewelry constitutes "expressive merchandise," as she contends. Rather, it is the sale itself that must be sufficiently expressive to warrant First Amendment scrutiny of New York City's licensing ordinance (*see Mastrovincenzo*, 435 F3d at 87 n 6, 91). Simply put, "the First Amendment protects speech rather than objects" (*id.* at 87 n 6; *see also id.* at 91 ["objects themselves do not actually communicate—people do. That is, people may, by creating or selling artistic objects, engage in protected speech"]; US Const Amend I ["Congress shall make no law . . . abridging the freedom of speech"]).[5]

## II.

A content-neutral regulation may reasonably restrict the time, place or manner of protected speech, even in a public forum,

---

**4.** Legislative enactments, including municipal ordinances, enjoy a strong presumption of constitutionality (*see Lighthouse Shores v Town of Islip*, 41 NY2d 7, 11 [1976]).

**5.** The First Amendment is made applicable to the states through the Fourteenth Amendment (*see* US Const Amend XIV; *Schneider v State [Town of Irvington]*, 308 US 147, 160 [1939]).

provided that the restriction is "narrowly tailored to serve a significant governmental interest" and "leave[s] open ample alternative channels for communication" (*Clark v Community for Creative Non-Violence*, 468 US 288, 293 [1984]; *see also People v Barton*, 8 NY3d 70, 76 [2006] [public-forum analysis under article I, § 8 of the State Constitution mirrors the federal standard]).

> "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys . . . A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others" (*Ward v Rock Against Racism*, 491 US 781, 791 [1989]).

Government regulation of expression is content neutral as long as it is "justified without reference to the content of the regulated speech" (*Clark*, 468 US at 293).

The License Law is content neutral (*see Mastrovincenzo*, 435 F3d at 99 ["New York City's licensing requirement applies across the board to all non-exempt vendors"]), and in no way seeks to censor the vendors it attempts to regulate. Defendant, like all artists and artisans, remains free to manufacture, show and advertise her jewelry—and even to sell it, just not in public spaces (*cf. Heffron v International Soc. for Krishna Consciousness, Inc.*, 452 US 640, 649 [1981] [regulation limiting sale or distribution of any merchandise at a public fairground to a duly licensed location "applies evenhandedly to all who wish to distribute and sell written materials"; regulation upheld as content-neutral time, place or manner restriction]; *see also Minneapolis Star & Tribune Co. v Minnesota Comm'r of Revenue*, 460 US 575, 581, 586, 586 n 9 [1983] [newspapers may constitutionally be made subject to generally applicable economic regulations, including sales and income taxes]).

## A.

New York City has significant interests in keeping its public spaces safe and free of congestion, maintaining its tax base and economic viability, and preventing the sale of stolen, defective or counterfeit merchandise (*see Mastrovincenzo*, 435 F3d at 99-100). As the City Council has found,

> "the public health, safety and welfare are threatened

by the unfettered use of city streets for commercial activity by unlicensed, and therefore illegal, general vendors. Such illicit operations have a pernicious effect on both the tax base and economic viability of the City. Unlicensed general vendors do not pay taxes, often sell stolen, defective or counterfeit merchandise[,] and siphon off business from reputable, tax-paying commercial establishments. The practice of selling their wares on the most congested streets of the City impedes the flow of pedestrian traffic, causing the overflow of traffic[,] and, at worst, . . . creates the potential for tragedy" (Local Law No. 40 [1988] of City of NY § 1; *see also* Local Law No. 50 [1979] of City of NY § 1 ["the presence of general vendors in certain parts of the city has caused serious congestion on the streets and sidewalks, preventing the regular flow of pedestrian and vehicular traffic, forcing pedestrians off the sidewalk, and thereby creating the increased potential for automobile and other vehicular accidents and posing an extremely serious threat to the health, safety, and well-being of citizens of, and visitors to, the city"]; *cf.* Local Law No. 45 [1993] of City of NY § 1 ["enormous proliferation" of vendors of exclusively written matter has impeded "the access of emergency services, including fire and police personnel, to the entrances of buildings and to fire hydrants," and hindered "the movement of police foot patrols along the sidewalks"]).

Further, the City's licensure requirement is reasonable and narrowly tailored, since the governmental interest in reducing urban congestion "would be achieved less effectively absent the regulation" (*United States v Albertini*, 472 US 675, 689 [1985]; *see also Mastrovincenzo*, 435 F3d at 100 [License Law is narrowly tailored]; Local Law No. 50 § 1 ["a limit on the total number of general vendor licenses should be established, because the business of general vending is intimately connected with problems of congestion on streets and sidewalks, and because an increase in the number of general vendors would worsen those conditions"]).

Indeed, *Mastrovincenzo* concluded that the License Law was narrowly tailored despite undisputed evidence that the limitation on the number of available general vendor's licenses effectively barred the plaintiffs there from ever obtaining one (*see* Administrative Code of City of NY § 20-459 [a] ["The number

of licenses in effect . . . on (September 1, 1979) shall be the maximum number of licenses permitted to be in effect"]; *Bery*, 97 F3d at 692 [number of licenses in effect on Sept. 1, 1979, was 853]).[6] In so holding, the court rejected *Bery*'s contrary conclusion that the practical inability of the plaintiffs to obtain a license operated as a *"de facto* bar preventing visual artists from exhibiting and selling their art in public areas in New York" (*Bery*, 97 F3d at 697; *see Mastrovincenzo*, 435 F3d at 100-101 [the ordinance "does not operate as an absolute bar against the sale of expressive items such as plaintiffs'; rather, the law merely prevents *unlicensed* vendors from selling such items on New York City streets and sidewalks"]).[7]

## B.

*Mastrovincenzo* also determined that the License Law left open ample alternative channels of communication (*see id.* at 101). Although the ordinance prohibited the unlicensed plaintiffs from selling their wares in public spaces, the court nevertheless concluded that they had ample alternative means by which to vend their art—either at galleries and trade shows, in their homes, on the Internet,[8] or through commission agreements with licensed vendors (*see id.* at 101, 102 n 19).

Despite the strictures of the ordinance, defendant remains free to make her jewelry, to give it away, and even to display it on the street (*see Bery*, 97 F3d at 695). Thus, the law "in no way precludes [defendant] from reaching public audiences on the sidewalks generally, or in any of the specific venues where [she] currently hawk[s her] wares" (*Mastrovincenzo*, 435 F3d at 101). Nor does it "attempt to ban any particular manner or type of expression at a given place or time" (*Ward*, 491 US at 802). At most, the ordinance prohibits her, as an unlicensed vendor, "from *personally* selling [her] wares *for a*

**6.** Over and above the statutory limitation codified by New York City Administrative Code § 20-459 (a), an unlimited number of additional licenses are available to veterans (*see* General Business Law § 32 [1], [8]). Defendant does not contend that she is eligible for a veteran's license.

**7.** Similarly, New York City's licensing scheme does not prevent jewelry from being sold on the streets; it prevents defendant from selling *her* jewelry without a license.

**8.** The *Bery* court, writing in 1996, did not consider that the plaintiffs might sell their work on the Internet.

*profit* and *at a venue of [her] choosing*" (*Mastrovincenzo*, 435 F3d at 101).[9]

## III.

Ultimately, *Mastrovincenzo* significantly limited the scope of *Bery*'s holding. First, the *Mastrovincenzo* court restricted the definitions of the categories of visual art at issue in *Bery*— namely, paintings, photographs, prints and sculpture—to the narrowest definitions of those terms, as understood by "plain meaning and normal usage" (*id.* at 103; *see also id.* at 104 ["paintings" refers "only and specifically to painted canvases"]).

Just as to define "painting" as "anything to which pigment has been applied" would "transform an otherwise narrow exception granted to four specific kinds of artwork into an 'exception that swallows the rule,' as virtually all goods would be exempted" (*id.* at 104), so, too, would a definition of "sculpture" that included all items molded into a shape. Thus, inasmuch as painted hats do not qualify as "paintings" within the meaning of *Bery* (*see id.* at 103, 105), it is clear that defendant's pieces of jewelry do not qualify as "sculpture."

Second, *Mastrovincenzo* distinguished between the presumptively expressive works of art at issue in *Bery* (paintings, photographs, prints and sculpture)—which automatically merit First Amendment protection and which, under *Bery*, could not constitutionally be made subject to the License Law (*see id.* at 102)—and potentially expressive objects whose sale *might* constitute protected speech, in which case First Amendment scrutiny of New York City's licensing requirement would be necessary (*see id.* at 93). But in undertaking such scrutiny (based on its determination that the sale of painted clothing at issue there was sufficiently expressive to so warrant), *Mastrovincenzo* ultimately concluded that when items offered for sale are only potentially expressive, the requirement that their sale be licensed constitutes a permissible time, place or manner restriction (*see id.* at 100, 102).

Jewelry falls squarely within the category of goods held to be merely potentially expressive. Indeed, even *Bery* characterized

---

**9.** That defendant is unable to sell her creations on the street does not in itself render the ordinance unconstitutional as applied (*see Connection Distrib. Co. v Reno*, 154 F3d 281, 293 [6th Cir 1998] ["the requirement that ample alternative channels be left available does not mean that there must be a channel where (defendant) can express (herself) in precisely the same manner as before the regulation"]).

the "crafts of the jeweler, the potter and the silversmith" as epitomizing objects that only "at times have expressive content" (*Bery*, 97 F3d at 696). That holding alone forecloses defendant's challenge.

In any event, inasmuch as *Mastrovincenzo* held that New York City's licensure requirement is a "valid, content-neutral restriction on speech" (*Mastrovincenzo*, 435 F3d at 81)—even when sale of the items sought to be sold is sufficiently expressive to "trigger First Amendment review" (*id.* at 93)—it is no longer necessary to determine whether a particular good offered for sale by an unlicensed general vendor serves a predominantly or only secondarily expressive purpose, or, put differently, whether the sale of defendant's jewelry constitutes protected speech.[10] For even if it does, the reasonable time, place or manner restriction at issue here may constitutionally be applied to her. Thus, there is no purpose to be served in holding a hearing or otherwise inspecting the merchandise at issue (*see* CPL 170.45, 210.45 [5] [a] [motion to dismiss may be denied without a hearing if the moving papers do not allege a ground constituting a legal basis for the motion]).

In sum, there are three categories of merchandise for purposes of determining whether the License Law may be validly applied to its sale. First, newspapers, periodicals, books, pamphlets or other similar written matter are expressly exempt by statute (*see* Administrative Code of City of NY § 20-453).[11] Second, paintings, photographs, prints and sculpture, narrowly defined, are exempt by the terms of the *Bery* injunction.[12] And third,

---

**10.** Under *Mastrovincenzo*, a court, in order to make such a determination, would have to first analyze whether the merchandise has a predominantly expressive purpose, even if it also has a nonexpressive or utilitarian purpose, and then consider whether the artist's stated motivation for producing and selling the item is a desire to communicate ideas—all with an eye toward determining whether the vendor is, in offering the item for sale, genuinely and primarily engaged in artistic self-expression or, instead, a chiefly commercial transaction (*see id.* at 91, 93-97). Jewelry, of course, has a utilitarian purpose in addition to any expressive purpose—namely, to wear it (*cf. id.* at 95 ["A cufflink fastens the cuff and keeps the shirtsleeve from crowding the wrist"]).

**11.** Of course, the mere inclusion of lettering or words on an object will not trigger the exemption, since only written matter "similar" to newspapers, periodicals, books and pamphlets is exempt (*id.*).

**12.** A New York court need not determine whether application of the licensure requirement to vendors of paintings, photographs, prints and sculpture would be prohibited by the First Amendment, since such application is independently barred by the terms of the *Bery* injunction consented to by,

everything else, including jewelry, may constitutionally be made subject to licensure as a reasonable time, place or manner restriction.

To be sure, pieces of jewelry may be so exquisite as to merit display at the Metropolitan Museum of Art, the Louvre, or the Hermitage—all of which contain jewelry exhibits within their permanent collections. But it is not the role of this court to determine whether defendant's jewelry is so worthy. As beautiful as her creations may be, the First Amendment does not forbid New York City from requiring defendant to obtain a license before she can sell them on the city streets.

Accordingly, defendant's motion to dismiss must be denied.

---

among others, the City of New York and the five District Attorneys of New York City (*but cf. Mastrovincenzo*, 435 F3d at 110 [Sack, J., concurring in part and dissenting in part] [noting that the "sweeping consent injunction . . . may have been entered into improvidently"]; *see also* Blake at 1070-1071 ["the injunction is used to protect any vendor selling mass-produced pictures of celebrities or photographs of landmarks, as well as any sidewalk calligrapher or Chinese-character painter" (internal quotation marks omitted)]).