OPINION OF THE COURT
Stephen Antignani, J.
Defendant is charged with one count of unlicensed general vendor (Administrative Code of City of NY § 20-453). Defendant moves in an omnibus motion for an order:
1. dismissing the accusatory instrument because Administrative Code § 20-453 is unconstitutional as applied; or in the alternative, for an order
2. dismissing the accusatory instrument as contrary to a New York City administrative rule and the legislative intent of the City Council; or in the alternative, for an order
3. dismissing the accusatory instrument for facial insufficiency pursuant to CPL 100.40, 170.30 (1) (a) and 170.35 (1) (a);
4. precluding the People from introducing evidence of any statement or identification testimony at trial for which CPL 710.30 notice has not been given;
5. precluding at trial the use of defendant’s prior criminal history or prior uncharged criminal, vicious, or immoral *998 conduct, and granting disclosure of uncharged criminal, vicious, or immoral acts, or in the alternative, directing the holding of a Sandoval and Ventimiglia hearing;
6. pursuant to CPL 240.20 for pretrial discovery and for a bill of particulars; and
7. reserving the right to make additional motions as necessary.
The People oppose the motion.
Contentions
Defendant argues that the Russian nesting dolls, or matry-oshki, he was allegedly selling are individually hand-painted Russian folk art pieces for which a vending license is not required, and are not souvenirs, collectibles or other trinkets for which a vending license would be required. He maintains that they are symbols of Russian culture and constitute art, the sale of which is protected by the First Amendment and is outside the licensing requirement of Administrative Code § 20-453. Defendant also argues that the accusatory instrument is facially insufficient and should be dismissed because it fails to allege sufficiently the “public space” element of Administrative Code § 20-453.
The People counter that there is no evidence that the designs here vary in complexity or difficulty of production and that the dominant purpose of these nesting dolls is to serve as decoration or playthings. Since the People maintain that the primary purpose of the nesting dolls is utilitarian and not expressive, they assert that the Russian nesting dolls do not enjoy First Amendment protection. They also argue that even if the court determines that First Amendment protection applies to the nesting dolls, Administrative Code § 20-453 is a reasonable time, place, and manner restriction on the sale of the dolls, and therefore it is constitutional as applied to this defendant {see People’s aff at 9). Regarding facial insufficiency, the People contend that the accusatory instrument sufficiently alleges the “public space” element of the statute and is facially sufficient.
The Accusatory Instrument
Defendant is charged with one count of unlicensed general vendor (Administrative Code § 20-453). The accusatory instrument states in pertinent part as it relates to an occurrence at 12:00 p.m. on December 5, 2015, across from 10 Columbus Circle, New York, New York:
*999 “I [Laura Gourdine, of an address known to the District Attorney’s Office] state on information and belief, the source of which is the supporting deposition of Police Officer Jean-Marc Remy, Shield No. 9807 of the Patrol Borough Manhattan South Street Crime Unit to be filed with this instrument, that defendant committed the above stated offense [AC 20-453]:
“Police Officer Jean-Marc Remy observed the defendant display and offer for sale 7 Russian dolls. At the time of the above officer’s observations, defendant was not displaying a license issued by the Department of Consumer Affairs and could not produce one when asked.
“Police Officer Jean-Marc Remy observed the defendant standing for approximately two minutes immediately next to a table and the above-described merchandise was offered for sale thereon.
“Police Officer Jean-Marc Remy further states that he approached defendant and asked the price of the merchandise and defendant said (in substance): ‘$40.’ ” (Accusatory instrument, Dec. 19, 2015; supporting deposition dated Dec. 5, 2015.)
The As-Applied Challenge
Unlicensed general vendor (Administrative Code § 20-453) provides:
“It shall be unlawful for any individual to act as a general vendor without having first obtained a license in accordance with the provisions of this subchapter, except that it shall be lawful for a general vendor who hawks, peddles, sells or offers to sell, at retail, only newspapers, periodicals, books, pamphlets or other similar written matter, but no other items required to be licensed by any other provision of this code, to vend such without obtaining a license therefor.”
Administrative Code § 20-452 (b) defines “general vendor” as “a person who hawks, peddles, sells, leases or offers to sell or lease, at retail, goods or services, including newspapers, periodicals, books, pamphlets or other similar written matter in a public space.”
Defendant argues that Administrative Code § 20-453 cannot be constitutionally enforced against him because the Russian *1000 nesting dolls, or matryoshki, are expressive art that is entitled to First Amendment protection.
In Bery v City of New York (97 F3d 689, 695-696 [2d Cir 1996]), the Second Circuit held, regarding a request for a preliminary injunction, that the selling of four specific art forms, namely, paintings, photography, prints and sculpture, was subject to constitutional protection. The Second Circuit also determined preliminarily that plaintiffs could likely demonstrate that Administrative Code § 20-453 did not pass the intermediate scrutiny test, which requires that statutory classifications be substantially related to an important governmental objective. New York City then chose to enter into a voluntary permanent injunction prohibiting it from
“ ‘enforcing [N.Y.C.] Admin. Code § 20-453 against any person who hawks, peddles, sells, leases or offers to sell or lease, at retail, any paintings, photographs, prints and/or sculpture, either exclusively or in conjunction with newspapers, periodicals, books, pamphlets or other similar written matter or other similar written matter, in a public space[.]’ Permanent Injunction on Consent dated Oct. 21, 1997, Bery v. City of New York, No. 94 Civ. 4253(MGC) (S.D.N.Y. Oct. 30, 1997); see also Mastrovincenzo, 313 F.Supp. 2d at 283.” (Mastrovincenzo v City of New York, 435 F3d 78, 86 [2d Cir 2006].)
Consequently, in New York City, people selling items that fall into those four specific categories are exempt from the license requirement of Administrative Code § 20-453. Everything else, being “potentially expressive” objects may constitutionally be made subject to licensure as a reasonable time, place or manner restriction (Mastrovincenzo, 435 F3d at 100, 102).
When, as is the case here, the visual expression cannot be clearly categorized as one of the four categories protected by the Bery injunction, the court “must conduct [a] case-by-case evaluation! ] to determine whether the work at issue is sufficiently expressive” (id. at 93 [emphasis omitted]). The Second Circuit in Mastrovincenzo adopted a two-part test to determine if an item constituted visual expression protected by the First Amendment.
First, the court should decide whether the item could be objectively understood to have any expressive or communicative elements (id. at 95-96). Second, the court must determine *1001 whether that item also has a common non-expressive purpose of utility (id.).
Given defendant’s own description that the items being sold are “dolls,” it is clear that these items are not included in the four specific categories of visual expression identified by the court in Bery, in that they are not “paintings/[1] photographs, sculptures[2] or prints.” Therefore, presumptive First Amendment protection does not apply to the items here.
In view of defendant’s general descriptions of the matryoshki as “individually hand-painted with traditionally thematic folk art . . . many of which bear the signature of the artist at their base” (defendant’s motion at 9, para 17), the photos of the matryoshki (defendant’s motion, exhibit H), and the historical meaning of the pieces as Russian folk art, this court finds that the Russian nesting dolls here are expressive (see City of New York v Rounovski, Envtl Control Bd, Appeal No. 1000222 [2010] [finding matryoshki are art within the scope of the Bery permanent injunction]; see also People v Rounovski, Crim Ct, NY County, May, 26, 2011, Whiten, J., 2011CN000662] [also finding matryoshki are art within the scope of the Bery permanent injunction]). This court additionally finds that, although described as “dolls,” the predominant purpose of the Russian nesting dolls is for visual expression and aesthetics.
Nonetheless, since Administrative Code § 20-453 leaves open to defendant “ample alternative channels” of communication, its enforcement here “does not violate [his] First Amendment rights” (Mastrovincenzo, 435 F3d at 100-102, citing Bery). Since the vending law does not ban the sale or display of Russian nesting dolls altogether, it is properly analyzed as a form of time, place and manner regulation. “Content-neutral” time, place, and manner of protected speech laws are constitutionally acceptable provided they serve a significant governmental interest and do not unreasonably limit alternative avenues of *1002 communication.[3] Administrative Code § 20-453 is such a law. Here, the law was narrowly tailored to serve the primary purpose of reducing urban congestion on streets and sidewalks, yet it allowed for multiple alternative venues for communication, such as stores, trade shows, homes, galleries, and the Internet (see Mastrovincenzo, 435 F3d at 100-101 [the ordinance “does not operate as an absolute bar against the sale of expressive items . . . ; rather, (it) merely prevents unlicensed vendors from selling such items on New York City streets and sidewalks”]). Defendant could even legally sell his wares on public streets by entering into commission agreements with licensed vendors {id. at 101). Thus, even though defendant’s Russian nesting dolls were “predominately expressive,” the New York City licensing ordinance is a constitutionally appropriate content-neutral time, place, and manner restriction on the sale of those dolls (see People v Ndiaye, 26 Misc 3d 212, 221 n 10 [Crim Ct, NY County 2009] [even if the sale of defendant’s jewelry constitutes protected speech, the reasonable time, place or manner restriction of Administrative Code § 20-453 may be constitutionally applied to her]). Administrative Code § 20-453 is, therefore, constitutional as applied to this defendant.
Article I, § 8 of the New York State Constitution mirrors the federal standard with regard to the test that is applied to content-neutral regulations of protected activities, at least those involving non-pure forms of expression (People v Barton, 8 NY3d 70, 76 [upholding Rochester ordinance limiting aggressive panhandling and articulating same test that was applied in Mastrovincenzo]; Matter of Rogers v New York City Tr. Auth., 89 NY2d 692 [1997] [applying federal precedents to uphold restrictions on subway platform newspaper sales]). As was stated above, the general vending law, as applied to defendant’s matryoshki vending, meets that content-neutral test. Neither the Federal nor the New York State Constitutions forbid New York City from requiring defendant to obtain a license before selling his goods in a public space in New York City.
Facial Insufficiency
An information is facially sufficient if it contains facts of an evidentiary character tending to support the charges (CPL 100.15 [3]; People v Dumas, 68 NY2d 729 [1986]). Furthermore, *1003 the information must contain nonhearsay allegations which establish, if true, every element of the offense charged and defendant’s commission thereof (CPL 100.40 [1] [b], [c]). An information which fails to satisfy these requirements is fatally defective (People v Alejandro, 70 NY2d 133, 139 [1987]).
The prima facie case requirement is a lower threshold than the burden of proof beyond a reasonable doubt required at trial (People v Henderson, 92 NY2d 677, 680 [1999]; People v Hyde, 302 AD2d 101 [1st Dept 2003]). Viewing the evidence in the light most favorable to the People (People v Gonzalez, 184 Misc 2d 262 [App Term, 1st Dept 2000], lv denied 95 NY2d 835 [2000]), the court must assess whether the factual allegations in the accusatory instrument are sufficiently evidentiary in character and tend to support the charges. Where the factual allegations contained in an information “give an accused [sufficient notice] to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading” (People v Casey, 95 NY2d 354, 360 [2000]; People v Konieczny, 2 NY3d 569 [2004]). Furthermore, the allegations must establish reasonable cause to believe and a prima facie case that a defendant is guilty of the crimes charged (People v Allen, 92 NY2d 378, 385 [1998]).
Defendant argues that the charges of unlicensed general vendor (Administrative Code § 20-453) and failure to wear a license (Administrative Code § 20-461) must be dismissed because the accusatory instrument fails to sufficiently plead facts that would establish that defendant was acting as a general vendor in a “public space,” as defined by the statute. Unlicensed general vendor (Administrative Code § 20-453) provides:
“It shall be unlawful for any individual to act as a general vendor without having first obtained a license in accordance with the provisions of this subchapter, except that it shall be lawful for a general vendor who hawks, peddles, sells or offers to sell, at retail, only newspapers, periodicals, books, pamphlets or other similar written matter, but no other items required to be licensed by any other provision of this code, to vend such without obtaining a license therefor.”
Administrative Code § 20-452 (b) defines “general vendor” as “[a] person who hawks, peddles, sells, leases or offers to sell or *1004 lease, at retail, goods or services, including newspapers, periodicals, books, pamphlets or other similar written matter in a public space.”
“Public space” is defined, pursuant to Administrative Code § 20-452 (d), as:
“All publicly owned property between the property lines on a street as such property lines are shown on the City Record including but not limited to a park, plaza, roadway, shoulder, tree space, sidewalk or parking space between such property lines. It shall also include, but not be limited to, publicly owned or leased land, buildings, piers, wharfs, stadiums and terminals.”
Defendant cites to People v Afilal (26 NY3d 1050 [2015]), where the Court of Appeals dismissed a criminal court complaint charging defendant with criminal possession of marijuana in the fifth degree (Penal Law § 221.10). The Afilal Court found that the public place element of that offense was insufficiently pleaded where it was alleged that defendant held a Ziplock bag of marijuana while standing “opposite 676 Riverside Drive.” In Afilal, a more specific description was required so as to more precisely plead the public nature of defendant’s location (Afilal at 1052) because the definition of “public place” which applies to Penal Law § 221.10 differs from the definition of “public space” which applies to Administrative Code § 20-453. “Public place” is defined, according to Penal Law § 240.00 (1), as
“a place to which the public or a substantial group of persons has access, and includes, but is not limited to, highways, transportation facilities, schools, places of amusement, parks, playgrounds, and hallways, lobbies and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence.”
The definition of “public space” pursuant to Administrative Code § 20-452 (d) is broader than the definition of “public place” in Penal Law § 240.00 (1) and may include publicly owned property to which the public has no access. Thus, the accusatory instrument here need not allege that the offense was public in nature. At this time, the application of Afilal is limited to its statutory context, namely cases involving the possession of marijuana (People v Jian Zhou, 51 Misc 3d 1206[A], 2016 NY Slip Op 50443[U] [Crim Ct, NY County, Mar. 18, 2016]).
Indeed, it has been held that alleging the sale of T-shirts in front of a street address satisfied the element of “public *1005 space” for facial insufficiency purposes (People v Jones, 30 Misc 3d 1228[A], 2011 NY Slip Op 50241[U] [Crim Ct, NY County 2011] [in front of 561 Broadway in New York City satisfies the element of “public space”]). In People v Jobi (10 Misc 3d 632, 633 [Crim Ct, NY County 2005]), the allegation that defendant was selling merchandise at the “corner of Canal and Baxter Streets” was sufficient to satisfy the element of “public space.” Similarly, in People v Gonzalez (184 Misc 2d 262, 264 [2000], lv denied 95 NY2d 835 [2000]), the Appellate Term, First Department held that a complaint that charged defendant with unlicensed general vendor for an incident that occurred “at the [northwest] corner of West 43rd Street and Broadway” established the “public space” element for this charge by holding that the complaint, as drafted, was facially sufficient. Here, the complaint is more particularized than one alleging a mere street address for the incident location. Instead the complaint in this case charges defendant with selling goods without a license across from 10 Columbus Circle, which is a large open pedestrian area leading to Central Park. Thus, when viewed in the light most favorable to the People (id. ), one can reasonably infer that the incident occurred in a “public space.” Thus, that element of the charge is satisfied (see also People v Kasse, 40 Misc 3d 126[A], 2013 NY Slip Op 51022[U] [App Term, 1st Dept 2013]; see People v Jian Zhou, 51 Misc 3d 1206[A], 2016 NY Slip Op 50443 [U] [Crim Ct, NY County 2016]).
Further, the accusatory instrument here states that the officer observed defendant display and “offer for sale” at said location seven Russian dolls, that defendant was not displaying a license and could not produce one when asked. The instrument additionally alleges that the officer observed defendant standing, for approximately two minutes, next to a table upon which the items were offered “for sale.” Also, it alleges that the officer saw four people approach defendant, examine the merchandise and engage in conversation with defendant. When the officer allegedly approached defendant and asked the price of the merchandise, defendant allegedly said, in substance, $40. These factual allegations, “given a fair and not overly restrictive or technical reading” (People v Casey, 95 NY2d 354, 360 [2000]), and viewed in a light most favorable to the People (People v Gonzalez, 184 Misc 2d 262 [App Term, 1st Dept 2000], lv denied 95 NY2d 835 [2000]), are sufficient for pleading purposes to establish a prima facie case that defendant violated Administrative Code § 20-453.
*1006 The motion to dismiss the accusatory instrument for facial insufficiency is denied.
Defendant’s Remaining Requests
Defendant’s request for discovery and inspection pursuant to CPL 240.20 is granted to the extent of the People’s responses. Insofar as defendant seeks a bill of particulars, that request is also granted to the extent of the information already provided by the People within the accusatory instrument and the voluntary disclosure form.
The People are precluded from introducing evidence of any statement or identification testimony at trial for which CPL 710.30 notice has not been given.
Defendant’s motion seeking compliance with the requirements of Brady v Maryland (373 US 83 [1963]) and Giglio v United States (405 US 150 [1972]) is granted. The People are reminded of their Rosario obligations.
The motion for an order granting a Sandoval and Ventimiglia hearing is held in abeyance for the trial judge.
The portion of the motion requesting production and preservation of all recorded police communications related to this case is denied to the extent that the People claim in their voluntary disclosure form that there are no recordings to be used at trial, and granted to the extent that any such recordings should be provided to the defense, if they exist, if they would be either Rosario material or Brady material or if the People intend to use the recording at trial.
That branch of defendant’s motion seeking reservation of the right to make further motions is granted to the extent that any additional motions are to be filed in conformance with CPL 255.20.

. “Paintings” refers only and specifically to painted canvases (Mastrovincenzo, 435 F3d at 104).

. Although defendant argues that the dolls may fall under the sculpture exception in Bery, the simple definition of sculpture is “a piece of art . . . made by carving or molding clay, stone, metal, etc.” (Merriam-Webster Online Dictionary, sculpture [www.Merriam-Webster.com/dictionary/sculpture].) Furthermore, carve is defined as “to cut (something, such as a pattern or design) into a surface” (Merriam-Webster Online Dictionary, carve [www.Merriam-Webster.com/dictionary/carve]). Defendant fails to show that these dolls were created in such a manner.

. A law that serves purposes unrelated to the content of expression is a “content-neutral” law (Ward, v Rock Against Racism, 491 US 781, 791 [1989]).